# Attachment 1



**U.S. Depa\u00a0ient of Justice**

*United States Attorney*
*Middle District of Alabama*

---

One Court Square, Suite 201
Post Office Box 197
Montgomery, Alabama 36101-0197

Telephone: 334/223-7280
Fax: 334/223-7560
Fin Lit Fax: 334/223-7201
Civil Fax 334/223-7418
Criminal Fax: 334/223-7135

June 6, 2006

**_VIA CERTIFIED MAIL_**
Donna M. Paul, M.D.
102 Meadow Wood Ct
Wetumpka, AL 36093

**_VIA CERTIFIED MAIL_**
Donna M. Paul, M.D.
500 Arba St.
Montgomery, AL 36104-5108

        Re:    <u>Donna M. Paul v. United States of America</u>
               USDC No.:  2:06-cv-3293-MHT

Dear Dr. Paul:

        Pursuant to the Court's Order of June 5, 2006, I am trying to contact you in regards to the summonses and Motion to Quash same previously filed with the Court. I would appreciate you contacting me at your earliest convenience so that we may discuss the matters and report to the Court by June 15, 2006, as ordered.

        I have taken the liberty of enclosing several cases that essentially outline our basic argument that your Motion to Quash, should service of process issues be resolved, is due to be denied. Basically, we contend that referring to you as "Donna S. Paul" as opposed to "Donna M. Paul" and having transposed three digits of your SS# on three attachments are mere technicalities that in no way have caused you prejudice. The lack of prejudice to you is evident in that your rights to contest compliance with the summonses were exercised when you filed your Motion to Quash. Similarly, the fact that the records sought by each summons are those of business entities of either you and/or your husband mitigates the idea that the IRS is seeking information from the wrong individual.

        Finally, futility counsels against quashing the summonses. Should you prevail, nothing will prevent my client from simply re-typing the summonses, correcting the errors previously discussed and serving them once again. Such exercises in futility are generally not required of the parties particularly when the error involved is clerical in nature and does not prejudice

Donna M. Paul, M.D.
June 6, 2006
Page 2


the opposing party's opportunity to fairly litigate the merits of the action.  Like any other litigant, the IRS is entitled to have its causes decided on the basis of substance, not form.

I look forward to hearing from you in the very near future in regards to this matter. If you have any questions, or if I may be of any assistance, please do not hesitate to contact me.

Sincerely,

FOR THE UNITED STATES ATTORNEY
LEURA G. CANARY


R. Randolph Neeley
Assistant United States Attorney


Enclosures

Slip Copy

Slip Copy, 2006 WL 505844 (W.D.Tex.)
**(Cite as: Slip Copy)**

Only the Westlaw citation is currently available.

United States District Court,W.D. Texas,San Antonio Division.

William R. JOHNSON, Petitioner,

v.

UNITED STATES OF AMERICA and Internal Revenue Service, Respondents.

**No. Civ.A. SA05CA1023-XR.**

Jan. 3, 2006.

William R. Johnson, York, PA, pro se.

Craig A. Gargotta, Asst. U.S. Atty., San Antonio, TX, for Respondents.

### ORDER

XAVIER RODRIGUEZ, J.

**\*1** On this date, the Court considered Petitioner William R. Johnson's petition to quash the Internal Revenue Service's third-party summons (docket no. 1) and the Internal Revenue Service's response in opposition (docket no. 2). Petitioner challenges an Internal Revenue Service (IRS) third-party summons to USAA Federal Savings Bank ("USAA Federal") as over broad and not in compliance with *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). The IRS opposes the petition as legalistic gibberish and incomprehensible challenges to the legality of the federal tax system which have been repeatedly renounced by the federal judiciary.

After careful consideration of the pleadings and evidence, the Court DENIES the motion (docket no. 1).

### I. Factual and Procedural Background

Petitioner, a resident of Pennsylvania, is currently under IRS investigation regarding his alleged involvement in promoting or sub-promoting abusive tax shelters. With regard to Petitioner's tax shelter activities, the IRS is also investigating his alleged business entities, Capital Consultants Inc., Capital Consultants Company, Westland Equities, and Pristine Management Group. The IRS assigned Agent Donna Lavelle to investigate Petitioner's activities under the provisions of Title 26, United States Code sections 6700 and 6701. Sections 6700 and 6701 authorize the imposition of tax penalties against persons who promote abusive tax shelters or aid and abet in the understatement of tax liability, respectively.

The IRS's investigation of Petitioner was initiated following his testimony in a May 23, 2001 deposition that he and/or his business entities has sold tax avoidance packages to clients.[FN1] These packages include Private Company Trust, Private Trust Organization, and International Based Corporation. The International Based Corporation package allegedly required Petitioner to establish a foreign bank account.[FN2] Petitioner allegedly testified in his deposition that establishing foreign bank accounts eliminated the ability of the IRS to review the transactions or bank

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 505844 (W.D.Tex.)
**(Cite as: Slip Copy)**

records. In addition to the tax avoidance schemes, the IRS investigation has allegedly uncovered that one of Petitioner's business entities, Westland Equities, recorded approximately $3,000,000 in mortgages to clients since 1995. Because neither Petitioner nor Westland Equities has filed a tax return disclosing the receipt of mortgage interest payments, the IRS questions whether these mortgages were legitimate or part of Petitioner's tax avoidance asset protection plans.

> FN1. Petitioner was deposed in an unrelated divorce proceeding involving one of his clients.

> FN2. The IRS alleges Petitioner established an account in Austria to service the International Based Corporation asset protection plan.

Petitioner and/or his business entities allegedly maintain bank accounts in multiple jurisdictions for which he holds signature authority. One or more of these accounts is maintained at USAA Federal in San Antonio, Texas. On September 30, 2005, Agent Lavelle issued a third-party summons to USAA Federal requesting all financial documents of Petitioner and any of his business entities, including, but not limited to, private banking agreements, savings and checking account records, loan records, and correspondence. The IRS seeks information for the time period covering January 1, 2002 through September 30, 2005.[FN3]

> FN3. Although Petitioner filed his Petition to Quash on October 19, 2005 and served USAA Federal by certified mail, return receipt requested, USAA Federal produced the requested documents to the IRS on October 24, 2005. The IRS has verified that it "has not reviewed the documents and has segregated and secured the documents pending consideration of the Petitioner's 'Motion to Quash Third Party Summons'." Resp., at 1 n. 1; *see also* Resp., at Ex. G-2 at ¶ 13.

**\*2** The IRS asserts the information sought is relevant to its investigation into Petitioner's alleged promotion of abusive tax avoidance schemes, including whether he made false statements to clients about the tax benefits of such schemes. The IRS seeks information, including canceled checks and mortgage documentation, which may identify the clients Petitioner sold tax avoidance packages. Petitioner has refused to identify his clients. The IRS claims the identities of Petitioner's clients are imperative to its investigation into the breadth of Petitioner's involvement in the tax avoidance schemes.

## II. Analysis

The IRS must establish a prima facie case for enforcement of a summons issued pursuant to Title 26, United States Code sections 7601 *et seq. United States v. Powell,* 379 U.S. 48, 57-58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In *Powell,* the Supreme Court delineated four factors courts must evaluate in determining whether the IRS established a prima facie case: (1) the investigation was conducted pursuant to a legitimate purpose; (2) the inquiry is relevant to that purpose; (3) the information sought is not already within the IRS's possession; and (4) the administrative steps required by the Internal Revenue Code have been followed. *Id.* The *Powell* prima facie case imposes only a minimal burden on the IRS, which "can be fulfilled by a 'simple affidavit' by the IRS agent issuing the summons." *Mazurek v. United States,* 271 F.3d 226, 230 (5th Cir.2001).

Here, Agent Lavelle submitted an affidavit to the Court stating that: (1) the summons issued with regard to the IRS's investigation of Petitioner's promotion of abusive tax shelter plans; (2) the summons "seeks relevant information which may shed light on [Petitioner's] activities in promoting abusive tax schemes, including whether he made false statements about tax benefits to his clients"; (3) the requested information was not already in the possession of the IRS; and (4) the summons was issued pursuant to and in accordance with the provisions of the Internal Revenue Code. *See* Resp., at Ex. G-2. Lavelle's affidavit establishes a prima facie case under *Powell.*

To rebut the IRS's prima facie case, Petitioner must refute one of the established *Powell* factors or show that the district court's enforcement of the summons would be an abuse of the judicial process. *Mazurek,* 271

F.3d at 230-31. "An abuse of the judicial process occurs when the summons is sought for an 'improper purpose, such as ... harass[ing] the taxpayer, ... put[ting] pressure on him to settle a collateral dispute' or obtaining information solely for a criminal prosecution under the guise of a civil liberty investigation." *Id.* at 231 (citations omitted). Contrary to the IRS's minimal burden, Petitioner's burden to rebut a *Powell* prima facie case is "heavy". *Id.*

Petitioner initially attacks the summons as an over broad fishing expedition, which has no legitimate purpose. The Court disagrees. The summons seeks financial information pertaining to Petitioner and his business entities over a three-year period of time. The breadth of documents the IRS seeks in the summons is necessitated by Petitioner's refusal to cooperate with the investigation. The IRS limited the summons to financial information which may identify the clients Petitioner sold tax avoidance packages and the existence of any mortgage activity, i.e. the focus of the investigation. The Court finds Petitioner's over broad objection fails to rebut the IRS's prima facie case. [FN4]

> FN4. This case is distinguishable from *United States v. Tratner,* 511 F.2d 248 (7th Cir.1975). In *Tratner,* the petitioner objected to an IRS summons seeking all 1971 deposits and checks related to an attorney escrow account. *Id.* at 254. The court required the IRS to specify the information it sought

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 505844 (W.D.Tex.)
(Cite as: Slip Copy)

Page 4

because a vast majority of the attorney escrow account information was subject to the attorney-client privilege and irrelevant. *Id.* Here, the attorney-client privilege is not at issue and the information sought by the summons is allegedly relevant to the IRS's investigation.

**\*3** Likewise, Petitioner's argument that section 7602 did not authorize Agent Lavelle to issue a summons regarding his bank records is misplaced. Section 7602 allows the examination of "any books, papers, records, or other data which may be relevant or material" to an IRS investigation. 26 U.S.C. § 7602(a)(1). Because Petitioner is the subject of an ongoing investigation, the IRS possessed the requisite authority to summon the production of his financial documents from USAA Federal.

Petitioner's argument that the summons is invalid under Title 12, United States Code sections 3403 and 3405 is equally misplaced. As Petitioner acknowledged, Title 12 does not apply to the production of records pursuant to the Internal Revenue Code. *See* 12 U.S.C. §§ 3413(c), (d). The IRS and Agent Lavelle were only required to comply with Internal Revenue Code sections 7601 *et seq.* Petitioner also claims the summons is invalid because it was not verified pursuant to Title 26, United States Code section 6065. Section 6065's verification requirement applies primarily to tax returns and has no interplay with the IRS's authority to issue a summons under section 7601 *et seq.* Even if Agent Lavelle was

required to verify the USAA Federal summons, the failure to do so would not entitle Petitioner to relief from its enforcement. *See Tilley v. United States,* 124 Fed. Appx. 277, 279 (5th Cir.2005) ("[T]his circuit has long recognized that we will refrain from requiring strict adherence to the technical niceties of the Internal Revenue Code as a predicate to enforcing an IRS summons."). Petitioner's verification argument is without merit.

### III. Conclusion

Petitioner seeks to quash an IRS third-party summons issued to USAA Federal Savings Bank. The affidavit of IRS Agent Donna Lavelle established a *prima facie* case for summons enforcement under *United States v. Powell.* Petitioner's claims of procedural and technical irregularities fail to refute any of the *Powell* factors or establish that enforcement of the summons would be an abuse of the judicial process. Petitioner's petition to quash is DENIED (docket no. 1).

Therefore, it is ORDERED that the IRS and Agent Lavelle are entitled to review the documents USAA Federal Savings Bank produced in response to the third-party summons on October 24, 2005.

W.D.Tex.,2006.
Johnson v. U.S.
Slip Copy, 2006 WL 505844 (W.D.Tex.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 5
Slip Copy, 2006 WL 505844 (W.D.Tex.)
**(Cite as: Slip Copy)**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

104 F.3d 886                                                                    Page 1
104 F.3d 886, 1997 Fed.App. 0023P, 97-1 USTC P 50,163, 79 A.F.T.R.2d 97-577
**(Cite as: 104 F.3d 886)**

▷
1997 Fed.App. 0023P
United States Court of Appeals,Sixth
Circuit.
Thomas M. COOK and Carol L. Cook,
Plaintiffs-Appellants,
v.
UNITED STATES of America,
Defendant-Appellee.
**No. 95-2055.**

Argued Aug. 15, 1996.
Decided Jan. 21, 1997.

Taxpayers filed petition to quash
administrative summons issued by Internal
Revenue Service (IRS) upon third-party bank.
The United States District Court for the
Western District of Michigan, Richard A.
Enslen, Chief Judge, denied petition, and
taxpayers appealed. The Court of Appeals,
Krupansky, Circuit Judge, held that: (1) as
matter of first impression, district court had
discretionary authority to excuse technical
notice errors if taxpayers suffered no actual
prejudice, and (2) district court did not abuse
its discretion.

Affirmed.

West Headnotes

**[1] Internal Revenue 220 ☜4512**

220 Internal Revenue
    220XX Examination of Persons and

Records
        220k4512 k. Presumptions and Burden
of Proof. Most Cited Cases
Generally, upon challenge to Internal Revenue
Service (IRS) summonses, government bears
initial burden of establishing prima facie case
of "good faith" by showing that summonses
were issued for legitimate purpose, seek
material relevant to that purpose, seek
material that is not already in government's
possession, and satisfy all administrative steps
required by the United States Code. 26
U.S.C.A. § 7609.

**[2] Internal Revenue 220 ☜4506**

220 Internal Revenue
        220XX Examination of Persons and
Records
        220k4506 k. Notice. Most Cited Cases
Failure of Internal Revenue Service (IRS) to
comply with statutory requirement that it give
taxpayers notice of third-party summons no
later than 23rd day before examination date
fixed in summons could be excused, in district
court's discretion, only if taxpayers were not
prejudice by such failure. 26 U.S.C.A. §
7609(a)(1).

**[3] Statutes 361 ☜227**

361 Statutes
    361VI Construction and Operation
            361VI(A) General Rules of
Construction
                361k227 k. Construction as
Mandatory or Directory. Most Cited Cases

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

104 F.3d 886                                                                                    Page 2
104 F.3d 886, 1997 Fed.App. 0023P, 97-1 USTC P 50,163, 79 A.F.T.R.2d 97-577
**(Cite as: 104 F.3d 886)**

The word "shall" is language of command which usually, although not always, signifies that Congress intended strict and nondiscretionary application of statute.

## [4] Internal Revenue 220 ☞4506

220 Internal Revenue
      220XX Examination of Persons and Records
      220k4506 k. Notice. Most Cited Cases
District courts possess discretionary authority to excuse technical notice errors made in regard to Internal Revenue Service (IRS) third-party summonses where party in interest suffered no actual prejudice. 26 U.S.C.A. § 7609(a).

## [5] Internal Revenue 220 ☞4506

220 Internal Revenue
      220XX Examination of Persons and Records
      220k4506 k. Notice. Most Cited Cases
Taxpayers were not prejudiced by failure of Internal Revenue Service (IRS) to comply with statutory requirement that it give taxpayers notice of third-party summons no later than 23rd day before examination date fixed in summons, and district court properly declined to quash summons, where taxpayers were not prevented from filing timely motion to quash or from raising their objections, and quashing summons would be futile, waste resources of public and third party, and delay criminal investigation. 26 U.S.C.A. § 7609(a)(1).

**\*887** Robert C. Shaver (argued and briefed), Rhoades, McKee, Boer, Goodrich & Titta, Grand Rapids, MI, for Plaintiffs-Appellants. Gary R. Allen, Acting Chief (briefed), Murray S. Horwitz (argued), Charles E. Brookhart, U.S. Department of Justice, Appellate Section Tax Division, Washington, DC, for Defendant-Appellee.

Before:      MARTIN, Chief Judge; KRUPANSKY and DAUGHTREY, Circuit Judges.

KRUPANSKY, Circuit Judge.
The plaintiffs-appellants, Thomas M. Cook ("Cook") and Carol L. Cook, a married couple ("the Cooks") have contested the district court's dismissal, for failure to state a claim, of their petition to quash an administrative summons issued by the Internal Revenue Service ("I.R.S." or "the Service"). The summons demanded production of certain third-party bank records sought in furtherance of an investigation of the Cooks' tax returns. The Cooks alleged that the summons should be quashed because notice thereof was served upon them one day out of rule dictated by 26 U.S.C. § 7609(a). The trial court rejected the Cooks' challenge, ruling *inter alia* that service of the I.R.S. notification one day beyond the statutory period imposed by 26 U.S.C. § 7609(a) did not prejudice the petitioners. The Cooks argue on appeal that the operative statute by its terms afforded no discretion to the trial court to excuse a technical failure by the I.R.S. to follow statutorily mandated notice procedures, and accordingly the summons should be set aside.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Subsequent to an I.R.S. investigation of possible criminal taxation violations by the Cooks and by American Metal and Plastics, Inc. (a corporation primarily owned and controlled by the Cooks) ("the corporation"), Thomas Cook pleaded guilty to two criminal informations, one which charged him with evasion of personal income taxes during the calendar year 1991 and the other which accused him of causing the corporation to underpay taxes due during the fiscal year which commenced June 30, 1989.    Cook, who had served as the administrator of the estate of Bessie Sikkenga, his deceased mother in law, exploited his access to a Sikkenga checking account no. 1,301,094 at the State Bank of Caledonia (Michigan) by depositing corporate funds to avoid payment of personal income taxes and diverting the funds to his personal use.    To implement the scheme he charged the diverted corporate funds against corporate income as fictitious business deductions.

Cook's plea agreement stipulated that he had effected additional tax evasions in his personal capacity and on behalf of the corporation during 1988 through 1991, which crimes constituted "relevant conduct" for sentencing purposes.    Cook ultimately was sentenced on January 31, 1995 to serve 21 months in prison, to be followed by three years of supervised release.    The sentencing court also imposed liability for unpaid taxes totalling $891,949 plus a $50,000 fine.

**\*888** After Cooks' sentencing, the I.R.S. received intelligence which implicated Cook in additional embezzlements from the corporation, and laundering of the fraudulently converted proceeds through the Sikkenga account, which predated 1988.    The ensuing I.R.S. investigation generated an administrative summons to the Bank of Caledonia ("the bank"), hand delivered to Assistant Vice President John R. DeVries on March 29, 1995, which directed the bank, as a third-party recordkeeper, to produce not later than April 21, 1995 all records and other items related to the Sikkenga account for the period January 1, 1984 through December 31, 1987. The summons reflected that the targets of the investigation were "Thomas M. and Carol L. Cook."

The I.R.S. must notify the investigation targets of the issuance of a related third-party recordkeeper summons in accordance with 26 U.S.C. § 7609(a), which posits in pertinent part:

(1) In general.-If-

(A) any summons described in subsection (c) [FN1] is served on any person who is a third-party recordkeeper,[FN2] and

> FN1.  26 U.S.C. § 7609(c)(1) embraces, *inter alia,* summonses served under section 7602(a)(2), which in turn empowers the I.R.S. to summon "any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

104 F.3d 886                                                                 Page 4
104 F.3d 886, 1997 Fed.App. 0023P, 97-1 USTC P 50,163, 79 A.F.T.R.2d 97-577
(Cite as: 104 F.3d 886)

any other person the Secretary may
deem proper...."

FN2. The statutory definition of a
"third-party recordkeeper" includes
banks and other savings institutions.
26 U.S.C. § 7609(a)(3)(A).

(B) the summons requires the production of
any portion of records made or kept of the
business transactions or affairs of any person
(other than the person summoned) who is
identified in the description of the records
contained in the summons,
then notice of the summons shall be given to
any person so identified within 3 days of the
day on which such service is made, but no
later than the 23rd day before the day fixed in
the summons as the day upon which such
records are to be examined. Such notice shall
be accompanied by a copy of the summons
which has been served and shall contain an
explanation of the right under subsection
(b)(2) to bring a proceeding to quash the
summons.

The Internal Revenue Code, 26 U.S.C. §
7609(a)(2), further posits that sufficient notice
is afforded
if on or before such third day [following
service of the summons on the third-party
recordkeeper], such notice ... is mailed by
certified or registered mail to the last known
address of such person [who is entitled to
notice][.]

Any person who is entitled to notice of a third
party summons, such as the Cooks, may
inaugurate a proceeding to quash that
summons no later than the twentieth day
following notification.      26 U.S.C. §
7609(b)(2).   The Service sent notice to the
Cooks via certified mail on March 30, 1995.
The appellants timely filed their petition to
quash the summons on April 18, 1995.

The parties have agreed that the I.R.S. posted,
via certified mail, the statutorily required
notification to the Cooks and their counsel
within the three day period following service
upon the Bank of Caledonia on March 29,
1995, as required by sections 7609(a)(1) and
(2).     However, the litigants have further
stipulated that, because the summons set April
21, 1995 as the compliance date, the Cooks
were statutorily entitled to notification at least
23 days prior to April 21, 1995;  in other
words, on or before March 29, 1995.    The
I.R.S. has conceded that it technically violated
section 7609(a)(1) by mailing statutory notice
to the Cooks on March 30, 1995, one day
following the close of the legislatively
mandated notification period.    The Cooks
have conceded that they suffered no actual
prejudice as a consequence of the delayed
notice, as they were able to initiate their
petition to quash the summons in a timely
manner and prior to the date of compliance
commanded by the summons.    Accordingly,
the legal issue joined for resolution by this
court is whether the pronouncement of section
7609(a)(1) is a procedural requirement that
cannot be waived or if the district court
possessed the discretion to excuse the **889

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

I.R.S.'s technical failure to seasonably discharge its statutory notification obligation to the appellants, where no prejudice to the petitioners resulted from the government's default. This legal question is decided de novo by the appellate court. *United States v. Spinelle,* 41 F.3d 1056, 1057 (6th Cir.1994); *Ponsford v. United States,* 771 F.2d 1305, 1308 (9th Cir.1985). If the trial court possessed discretionary power to excuse the government's technical default, this reviewing court will disturb that decision only if it constituted an abuse of discretion, which "exists [only] when the reviewing court is firmly convinced that a mistake has been made." *Romstadt v. Allstate Ins. Co.,* 59 F.3d 608, 615 (6th Cir.1995).

[1] Generally, upon a challenge to an I.R.S. summons:
the government bears the initial burden of establishing a prima facie case of "good faith" by showing that the summonses: 1) were issued for a legitimate purpose; 2) seek material relevant to that purpose; 3) seek material that is not already in the government's possession; and 4) satisfy all administrative steps required by the United States Code. *Kondik v. United States,* 81 F.3d 655, 656 (6th Cir.1996), *citing, inter alia, United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964).

[2] The instant appeal concerns element no. 4 of the above test-to wit, did the Service's procedural error constitute a breach of an essential administrative step which compels

invalidation of the summons?

[3] This is an issue of first impression within this circuit. To determine a resolution the court initially examines the statutory language itself. *United States v. James,* 478 U.S. 597, 606, 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483 (1986). Section 7609(a)(1), quoted *supra,* dictates that the required notice "*shall be given* to any person so identified [as a target of the investigation] within 3 days of the day on which service is made [upon the third-party recordkeeper], but *no later than the 23rd day before the day fixed in the summons as the day upon which such records are to be examined.*" (Emphasis added). The word "shall" is "the language of command" which usually, although not always, signifies that Congress intended strict and nondiscretionary application of the statute. *Escoe v. Zerbst,* 295 U.S. 490, 493, 55 S.Ct. 818, 820, 79 L.Ed. 1566 (1935). Thus, it would appear that Congress has unequivocally commanded that the I.R.S. afford 23 days notice, not something less, to a target of an I.R.S. investigation that a summons has been issued to a third party recordkeeper to produce the target's documents. The I.R.S. possesses no discretionary authority to give the subject of an investigation less than 23 days notice. However, Congress has *not* evidenced an intention to render *void* every third party summons which does not comply with every technical stricture of section 7609. Given the public interest at stake in effective and efficient enforcement of the national revenue laws, this court will not impute such an intention to Congress in the absence of a clear

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

legislative statement.

[4][5] A more equitable resolution would confer discretion upon the trial courts to excuse the Service's technical notification default *if, and only if,* the party (or parties) entitled to statutory notification was (or were) not substantially prejudiced by the violation-that is, if the error was harmless. *See, e.g., United States v. Ritchie,* 15 F.3d 592, 600 (6th Cir.1994) (nonprejudicial errors in administrative procedures mandated by section 7609(f) concerning "John Doe" summonses ruled not fatal to the summons), *cert. denied,* 513 U.S. 868, 115 S.Ct. 188, 130 L.Ed.2d 121 (1994). In the instant case, the Cooks were not precluded from filing their timely motion to quash the summons prior to the date set for the production of the Sikkenga account records in possession of the bank despite the government's untimely notice. The Cooks had realized every benefit due to them under the statute. Indeed, the appellants have stipulated that they suffered no actual prejudice resultant from the tardy notification.

In the instant case it would have been an exercise in futility for the district court to quash the summons here in controversy solely because of a nonprejudicial technical oversight, after the Cooks had in fact already *890 presented to the court in a timely manner their various objections to the summons, because such an order would merely have compelled the I.R.S. to re-issue the summons to the bank, this time accompanied by 23 days notice to the Cooks instead of 22 days. This court will not compel a futile and pointless

duplication of effort by the government, the attendant waste of public resource and those of the bank, and the concomitant delay of a criminal investigation which would flow from a rigid formal adherence to statutory notification requisites divorced from the realities of the particular case. *Accord, Sylvestre v. United States,* 978 F.2d 25 (1st Cir.1992), *cert. denied,* 507 U.S. 994, 113 S.Ct. 1606, 123 L.Ed.2d 168 (1993); *United States v. Texas Heart Institute,* 755 F.2d 469 (5th Cir.1985), *overruled on other grounds by United States v. Barrett,* 837 F.2d 1341 (5th Cir.1988) (en banc) (per curiam), *cert. denied,* 492 U.S. 926, 109 S.Ct. 3264, 106 L.Ed.2d 609 (1989).

This court stresses that it rules *only* that the district courts possess discretionary authority to excuse the Service's technical notice errors where the party in interest suffered no actual prejudice. However, this opinion must not be construed as investing the I.R.S. with a license to ignore statutory deadlines or to negligently violate other legal requirements. This court is disturbed by a history of I.R.S. irresponsibility in honoring and respecting filing requirements which borders upon an expression of arrogant immunity from executive, legislative, and judicial mandates. For example, in this very case wherein a filing deadline is joined in issue, the record discloses a disconcerting pattern of inexcusable neglect by the Service and its attorneys in discharging legally mandated obligations. Pursuant to a stipulation by the parties, a magistrate judge extended the time for the government's reply to the Cooks' April 18, 1995 petition to quash

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

104 F.3d 886                                                           Page 7
104 F.3d 886, 1997 Fed.App. 0023P, 97-1 USTC P 50,163, 79 A.F.T.R.2d 97-577
**(Cite as: 104 F.3d 886)**

the summons, accompanied by the proviso that "no further extension will be granted." Although the magistrate set June 29, 1995 as the response deadline, the Service, without a timely motion for an extension, did not attempt to file its purported opposition (a Motion to Dismiss the petition) until June 30, 1995. The district court rejected this filing on July 6, 1995 because it violated Local Rule 24(c) of the United States District Court for the Western District of Michigan, which requires the submission of an original plus one copy of all filings. The I.R.S. did not correct its procedural error until July 12, 1995. Although default was entered against the government on August 14, 1995, the district court on August 18, 1995 set aside that default on the rationale that the petitioners had not been prejudiced by the Service's delay. In the court of appeals, the government filed its appellee's brief one day late.

This court has recently admonished the I.R.S. in a different context (that of special hearing procedures commanded by 26 U.S.C. § 7609(f) respecting "John Doe" summonses) that it must satisfy technical legal conditions or otherwise risk adverse consequences:
[B]ecause of the unique facts of this case we will not require the IRS to start the process all over.... [T]he statutory protections to which Ritchie's clients are entitled have been afforded them in spirit, even if not by compliance with the letter of the law. [Note].
At this stage of the proceedings, it would exalt form over substance to make the IRS go through the motions of having an ex parte court proceeding, getting the summons issued,

serving it, defending a motion to quash, and filing a motion for enforcement, all to bring us back where we are now. [Note]. We are not suggesting that the IRS may in the future avoid going through the ex parte proceeding required by § 7609(f), for now the IRS has fair notice that if it cannot demonstrate a bona fide interest in investigating the tax liability of the party summoned, it must comply with § 7609(f). *United States v. Ritchie,* 15 F.3d 592, 600 (6th Cir.), *cert. denied,* 513 U.S. 868, 115 S.Ct. 188, 130 L.Ed.2d 121 (1994).

Although this court, on the facts of the instant case, will excuse the government's technical default for the reasons evolved herein, the Service would be well advised in the future to heed the warning of *Ritchie,* which this court now amplifies. This court shall review future violations of technical legal requirements by the I.R.S. and its agents and attorneys with an increasingly critical **\*891** eye. *Accord, United States v. Gertner,* 65 F.3d 963 (1st Cir.1995).

The judgment of the district court is hereby **AFFIRMED**.

C.A.6 (Mich.),1997.
Cook v. U.S.
104 F.3d 886, 1997 Fed.App. 0023P, 97-1 USTC P 50,163, 79 A.F.T.R.2d 97-577

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

394 F.Supp.2d 1277                                                    Page 1
394 F.Supp.2d 1277, 2005-2 USTC P 50,514, 96 A.F.T.R.2d 2005-5493
**(Cite as: 394 F.Supp.2d 1277)**

**C**

United States District Court,D. Hawai'i.
Bruce R. TRAVIS, Plaintiff
v.
Gregory MIKI, Commissioner of the Internal
Revenue Service, Mark Everson,
Defendants.
**No. 04-00728 SOM/LEK.**

July 15, 2005.

**Background:** Taxpayer filed a petition to
quash several Internal Revenue Service (IRS)
summonses on third-party recordkeepers
during IRS investigation of his tax liabilities.

**Holdings:** The District Court, Mollway, J.,
held that:

7(1) IRS special agent's sworn declaration
established prima facie case for enforcement
of the summonses;

8(2) summons seeking documents in
possession of corporation that taxpayer was
president and 50% owner of did not violate
taxpayer's claimed Fifth Amendment privilege
against self-incrimination; and

10(3) special agent's failure to provide
taxpayer with notice of two summonses within
the three-day time period prescribed by statute
was not grounds to quash the summonses.

Petition denied.

West Headnotes

**[1] United States 393 ☜125(34)**

393 United States
    393IX Actions
        393k125 Liability and Consent of
United States to Be Sued
        393k125(28) Particular Departments,
Officers, or Agencies, Suits Against
            393k125(34) k. Treasury
Department and Internal Revenue Bureau.
Most Cited Cases
Suit against Internal Revenue Service (IRS)
employees in their official capacity is
essentially a suit against the United States.

**[2] United States 393 ☜125(3)**

393 United States
    393IX Actions
        393k125 Liability and Consent of
United States to Be Sued
        393k125(3) k. Necessity of Waiver
or Consent. Most Cited Cases
Under the doctrine of sovereign immunity, the
United States is immune from suit unless it
has expressly waived such immunity and
consented to be sued.

**[3] Internal Revenue 220 ☜4490**

220 Internal Revenue

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

394 F.Supp.2d 1277                                                                      Page 2
394 F.Supp.2d 1277, 2005-2 USTC P 50,514, 96 A.F.T.R.2d 2005-5493
**(Cite as: 394 F.Supp.2d 1277)**

220XX Examination of Persons and Records
220k4490 k. In General. Most Cited Cases
Summons power of the Internal Revenue Service (IRS) is an investigative tool provided by Congress to enable the IRS to determine and assess all taxes due under the Internal Revenue Code. 26 U.S.C.A. § 7609.

**[4] Internal Revenue 220 ☜4512**

220 Internal Revenue
220XX Examination of Persons and Records
220k4512 k. Presumptions and Burden of Proof. Most Cited Cases
To defeat the petition to quash and to enforce the summons on a third-party record keeper, the Internal Revenue Service (IRS) has the burden of establishing a prima facie case for enforcement. 26 U.S.C.A. § 7609.

**[5] Internal Revenue 220 ☜4499**

220 Internal Revenue
220XX Examination of Persons and Records
220k4499 k. Examination of Third Persons and Their Records. Most Cited Cases
To establish a prima facie case for enforcement of summons on a third-party record keeper, Internal Revenue Service (IRS) must show that the summons (1) is issued for a legitimate purpose; (2) seeks information relevant to that purpose;   (3) seeks information that is not already within the IRS's possession; and (4) satisfies all administrative

steps required by the United States Code. 26 U.S.C.A. § 7609.

**[6] Internal Revenue 220 ☜4512**

220 Internal Revenue
220XX Examination of Persons and Records
220k4512 k. Presumptions and Burden of Proof. Most Cited Cases
Once the Internal Revenue Service (IRS) has met its burden of establishing a prima facie case for enforcement of summons on a third-party record keeper, the taxpayer faces heavy burden of showing an abuse of process or lack of institutional good faith.   26 U.S.C.A. § 7609.

**[7] Internal Revenue 220 ☜4513**

220 Internal Revenue
220XX Examination of Persons and Records
220k4513 k. Weight and Sufficiency. Most Cited Cases
Internal Revenue Service (IRS) special agent's sworn declaration that he was conducting an investigation for the purpose of determining taxpayer's correct federal income tax liabilities, the books, records, and testimony sought by the summonses on a third-party record keeper could be relevant to that inquiry and was not already in the IRS's possession, and that all administrative steps required by the IRS had been substantially followed established prima facie case for enforcement of the summonses. 26 U.S.C.A. § 7609.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**[8] Witnesses 410 ☜298**

410 Witnesses
    410III Examination
        410III(D) Privilege of Witness
            410k298 k. Privilege as to
Production of Documents. Most Cited Cases
Internal Revenue Service (IRS) summons
seeking documents in possession of
corporation that taxpayer was president and
50% owner of did not violate taxpayer's
claimed Fifth Amendment privilege against
self-incrimination. U.S.C.A. Const.Amend. 5.

**[9] Witnesses 410 ☜298**

410 Witnesses
    410III Examination
        410III(D) Privilege of Witness
            410k298 k. Privilege as to
Production of Documents. Most Cited Cases
Fifth Amendment privilege against
self-incrimination protects an individual only
against the forced production of personal
documents that may incriminate the
individual; privilege does not extend to the
records of entities, such as corporations,
partnerships, and trusts, that happen to be in
the individual's possession. U.S.C.A.
Const.Amend. 5.

**[10] Internal Revenue 220 ☜4506**

220 Internal Revenue
    220XX Examination of Persons and
Records
        220k4506 k. Notice. Most Cited Cases
Failure of Internal Revenue Service (IRS)

special agent to provide taxpayer with notice
of two summonses on third-party record
keepers within the three-day time period
prescribed by statute was not grounds to quash
the summonses, where taxpayer did not allege
any prejudice from the delay, and received
notice of the summonses in time to file
petition to quash. 26 U.S.C.A. § 7609.

**\*1279** Bruce R. Travis, Kihei, HI, Paul J.
Sulla, Jr., Hanalei, HI, for Plaintiff.
Keith S. Blair, Washington, DC, Harry Yee,
Office of the United States Attorney
Honolulu, HI, for Defendants.

*ORDER GRANTING UNITED STATES'
MOTION TO DISMISS PETITION TO
QUASH SUMMONSES; ORDER
GRANTING UNITED STATES' PETITION
TO ENFORCE SUMMONSES*
MOLLWAY, District Judge.

### I. INTRODUCTION.

Petitioner Bruce Travis has filed a Petition to
Quash several IRS summonses. The United
States moves to dismiss Travis' petition and
counter-petitions to enforce the summonses.
The court concludes that the summonses are
enforceable. Accordingly, the court grants
the United States' motion to dismiss Travis'
petition, and grants the United States' petition
to enforce the summonses.[FN1]

> FN1. Pursuant to Local Rule 7.2, the
> court decides this motion without a

394 F.Supp.2d 1277                                                                                 Page 4
394 F.Supp.2d 1277, 2005-2 USTC P 50,514, 96 A.F.T.R.2d 2005-5493
**(Cite as: 394 F.Supp.2d 1277)**

hearing.

## II. *BACKGROUND.*

The IRS is currently investigating the income tax liabilities of Bruce Travis for the years 1996 through 2003. As part of this investigation, IRS Special Agent Gregory Miki served summonses on several individuals and businesses, directing the individuals and businesses to give testimony and produce documents.

Miki served the first summons on Harold Berman on November 22, 2004, requesting "Any and all documents in your custody or control relative to the financial transactions of Bruce Robert Travis." *See* Ex. A. The next day, Miki served a second summons on Kerry Cullins, again requesting "Any and all documents in your custody or control relative to the financial transactions of Bruce Robert Travis." *See* Ex. B. In his Declaration, Miki states that, on November 24, 2004, he attempted to provide timely notice of the summonses to Travis by certified mail. Miki Dec. ¶ 9. Miki admits, however, that the summonses were not actually sent to Travis until November 29, 2004. *Id.* Travis received notice of the summonses on December 1, 2004. *See* Ex. A; Ex. B.

On November 23, 2004, Miki issued a third summons, this time to Americorp International, Ltd. *See* Ex. C. Miki personally served this summons on Travis, who was the president and 50% owner of Americorp International, Ltd. Miki Dec. ¶ 11.

On December 1, 2004, Miki issued two summonses to Bank of Hawaii by registered mail. *Id.* ¶ 14. Miki gave notice to Travis by mailing copies of the summonses by certified mail. *Id.* Travis received the notices on December 3, 2004. *See* Ex. D.

On December 14, 2004, Travis, proceeding *pro se*, filed a Petition to Quash Third Party Summonses. As Defendants, Travis listed Gregory Miki, the IRS Special Agent who signed the summonses, and Mark Everson, the Commissioner of the IRS.

## *1280 III. *ANALYSIS.*

### A. *The United States is the Proper Defendant in this Case.*

As an initial matter, the petition must be dismissed with respect to Defendants Miki and Commissioner Everson, and the United States must be substituted as the Defendant.

[1] It is well settled that "a suit against IRS employees in their official capacity is essentially a suit against the United States." *Gilbert v. DaGrossa* 756 F.2d 1455, 1458 (9th Cir.1985) (citations omitted). Accordingly, the suit against Miki and Everson is dismissed, and the United States is substituted as the Defendant.

[2] Under the doctrine of sovereign immunity, the United States is immune from suit unless it has expressly waived such immunity and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

consented to be sued. *Id.; United States v. Shaw,* 309 U.S. 495, 500-01, 60 S.Ct. 659, 84 L.Ed. 888 (1940). The United States has consented to suit in petitions to quash IRS summonses within twenty days after notice of the summons is given. *See* 26 U.S.C. § 7609(b)(2).

Travis received the first notice of summons on December 1, 2004. He brought this action on December 14, 2004, and was therefore within the twenty-day period provided for by 26 U.S.C. § 7609(b)(2). Travis timely filed his petition, and the court turns to the merits of his petition to quash the summonses.

**B. *The Summonses Are Enforceable.***

[3] Under 26 U.S.C. § 7609, the IRS is authorized to serve a summons on a third-party record keeper. The summons power of the IRS "is an investigative tool provided by Congress to enable the IRS to determine and assess all taxes due under the Internal Revenue Code." *United States v. Jose* 131 F.3d 1325, 1327 (9th Cir.1997). Section 7609 also authorizes the taxpayer to challenge the summons. *See* 26 U.S.C. § 7609(b). If the taxpayer challenges the summons, the IRS may seek to enforce the challenged summons in the same proceeding. *Id.*

[4][5][6] To defeat the petition to quash and to enforce the summons, the IRS has the burden of establishing a *prima facie* case for enforcement. *United States v. Powell* 379 U.S. 48, 57-58, 85 S.Ct. 248, 13 L.Ed.2d 112

(1964). The IRS must show that the summons (1) is issued for a legitimate purpose; (2) seeks information relevant to that purpose; (3) seeks information that is not already within the IRS's possession; and (4) satisfies all administrative steps required by the United States Code. *Id.* The IRS's burden is "slight" and generally can be met by a sworn declaration of the revenue agent who issued the summons that the *Powell* requirements have been met. *Fortney v. United States* 59 F.3d 117, 120 (9th Cir.1995). Once the IRS has met its burden, the taxpayer faces the "heavy" burden of showing an "abuse of process" or "lack of institutional good faith." *Id.*

[7] The IRS satisfies its slight burden. Miki has submitted a sworn declaration that: (1) he is conducting an investigation for the purpose of determining Travis's correct federal income tax liabilities for the years 1996 through 2003, *see* Miki Dec. ¶ 2; (2) the books, records, and testimony sought by the summonses may be relevant to this inquiry, *see id.* ¶ 17; (3) the information sought in the summonses is not already in the IRS's possession, *see id.* ¶ ¶ 5, 8, 12, 15; and (4) all administrative steps required by the IRS have been substantially followed, *see id.* ¶ 19.

The burden thus shifts to Travis, who must satisfy the "heavy" burden of showing "abuse of process" or "lack of institutional good faith." Travis does not meet this burden.

**\*1281** Travis first alleges that the summonses are improper because, under 26 U.S.C. §

394 F.Supp.2d 1277
394 F.Supp.2d 1277, 2005-2 USTC P 50,514, 96 A.F.T.R.2d 2005-5493
(Cite as: 394 F.Supp.2d 1277)

Page 6

7602, administrative summonses may not be issued when there is a Justice Department referral in the case.   Travis claims that a Justice Department referral may be inferred by Miki's job title of "Special Agent," which Travis claims is a "law enforcement" and "criminal investigation" position.  Miki states in his Declaration, however, that "No Justice Department referral, as defined by 26 U.S.C. § 7602(d)(2), is in effect with respect to Bruce R. Travis for the years under investigation."  Miki Dec. ¶ 18.   Travis presents no evidence to rebut this statement.   The record therefore establishes that there is no Justice Department referral with respect to Travis for the years covered by the summonses.

Travis next contends that "Special Agent Gregory Miki has violated the Third Party Summonses Notice Provisions" by failing to provide proper notice of the Americorp International, Ltd., summons.  That provision states that "notice of the summons shall be given to any person [identified in the summons] within 3 days of the day on which such service is made."

Miki, however, states that he himself served the Americorp International, Ltd., summons on Travis.  Miki Dec. ¶ 11.  Travis, in his affidavit, states that Miki "confronted" him at Travis's office, and that "Special Agent Gregory Miki abandoned the [Americorp International, Ltd.,] summons at my office on 23 November 2004."    Travis Aff. at 2.  Although Travis chooses to describe the service of the summons as an "abandonment," Travis concedes that Miki left the summons with him.

[8] Finally, Travis raises a Fifth Amendment defense, arguing that the Americorp International, Ltd., summons "is a thinly-veiled attempt to circumvent my rights."    Travis cites the Ninth Circuit's decision in *United States v. Troescher* 99 F.3d 933 (9th Cir.1996), arguing that, because the summons requires him to produce evidence about himself that might "hav[e] a tendency to incriminate," the summons violates his rights under the Fifth Amendment.

[9] The Fifth Amendment privilege against self-incrimination, however, protects an individual only against the forced production of personal documents that may incriminate the individual.  The privilege does not extend to the records of entities, such as corporations, partnerships, and trusts, that happen to be in the individual's possession.  *See Braswell v. United States,* 487 U.S. 99, 113, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988) ("A custodian may not resist a subpoena for corporate records on Fifth Amendment grounds."); *Bellis v. United States,* 417 U.S. 85, 88, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974) (Fifth Amendment protections do not extend to partnerships).  Americorp International, Ltd.'s documents are not protected by Travis's claimed Fifth Amendment privilege, and Travis fails to establish any violation of his rights.

[10] The court notes that Miki did not provide Travis with notice of the Berman and Cullins summonses within the three-day time period

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

prescribed by 26 U.S.C. § 7609. Miki, in his Declaration, states,

On November 24, 2004, I attempted to provide timely notice of the summonses in Exhibits A and B by placing copies of them in the outgoing mailbox in my office to be sent to Travis via certified mail. However, the summonses were not actually sent to Travis until November 29, 2004.

Miki served the Berman summons on November 22, 2004, and served the Cullins summons on November 23, 2004. November 29, 2004, the date that Miki sent the summonses to Travis, was more than three days after either service.

*1282 Travis, however, does not allege any prejudice from this short delay. Further, he received notice of the summonses in time to file the present petition to quash. Those courts that have addressed the issue have held that a district court may excuse the "technical" notification requirement "if, and only if, the party (or parties) entitled to statutory notification was (or were) not substantially prejudiced by the violation-that is, if the error was harmless." *Cook v. United States* 104 F.3d 886, 889 (6th Cir.1997) (citing *United States v. Ritchie* 15 F.3d 592, 600 (6th Cir.1994)); *see also Sylvestre v. United States*, 978 F.2d 25, 28 (1st Cir.1992) ("It is obvious that the purpose of notice, in advance of the date fixed for examination of records ... is to allow [petitioner] the opportunity to invoke his right to intervene and seek to quash the summons before that examination."); *United States v. Bank of Moulton* 614 F.2d

1063, 1066 (5th Cir.1980) ("We, too, decline to elevate form over substance and reject the suggestion that every infringement of a requirement of the Internal Revenue Code absolutely precludes enforcement of an IRS summons."); *Muratore v. Dept. of the Treasury* 315 F.Supp.2d 305, 312 (W.D.N.Y.2004) (procedural defect of failure to provide timely notice was not grounds to quash the summonses where petitioners failed to show prejudice). The court concludes that the short delay in providing notice is not grounds to quash the summonses.

## IV. *CONCLUSION.*

The summonses are enforceable. Travis's petition to quash is denied, and the Government's counter-petition to enforce the summonses is granted.

IT IS SO ORDERED.

D.Hawai'i,2005.
Travis v. Miki
394 F.Supp.2d 1277, 2005-2 USTC P 50,514, 96 A.F.T.R.2d 2005-5493

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.